IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SUSTAINABLE MODULAR          §
MANAGEMENT, INC.,            §
                            §
            Plaintiff,       §
                            §   Civil Action No. 3:20-CV-1883-D
VS.                          §
                            §
THE TRAVELERS LLOYDS         §
INSURANCE COMPANY,           §
                            §
            Defendant.       §

MEMORANDUM OPINION
AND ORDER

In this removed action involving insurance coverage and related claims, plaintiff

Sustainable Modular Management, Inc. ("SMM") moves to modify the scheduling order and

for leave to file a second amended complaint, and to modify the scheduling order to allow

additional discovery. Concluding that SMM has failed to satisfy the good cause standard of

Fed. R. Civ. P. 16(b)(4), the court denies the motion to modify the scheduling order so that

SMM can file a second amended complaint. Finding that SMM has satisfied the Rule

16(b)(4) good cause standard with respect to its motion to modify the scheduling order to

allow additional discovery, the court grants that motion.

I

A

SMM filed this lawsuit against defendant The Travelers Lloyds Insurance Company

("Travelers") in Texas state court in June 2020. In SMM's original state-court petition, it

alleged that Travelers wrongfully denied coverage in connection with a loss event that involved water intrusion and mold growth at a modular building placed in Hawaii in 2016.[1] SMM asserted that this conduct violated the Texas Insurance Code,[2] and it also pleaded claims for breach of contract, common-law fraud, and negligent misrepresentation. Travelers removed the case to this court in July 2020 based on diversity of citizenship.

B

This lawsuit is a byproduct of previous litigation between SMM and AECOM Technical Services, Inc. ("AECOM") concerning the loss event at the modular building in Hawaii. After the loss event, SMM undertook efforts to meliorate the building and filed a claim with Travelers under SMM's relevant insurance policy. Travelers then retained The Vertex Companies, Inc. ("Vertex") as a forensic examiner to assist Travelers in investigating the loss event. In December 2017 Vertex issued its first report at the request of and for Travelers, concluding that the cause of water loss was not attributable to roof leaks but rather to deficient site preparation, specifically, that the building pad was located below grade and did not allow for proper drainage.[3] Thus the cause of loss fell under AECOM's scope of

---

[1]In the briefing, this date is referred to either as 2016 or 2017. This apparent discrepancy may be explained in SMM's proposed second amended complaint, which alleges that "[t]he buildings were installed in 2016, but the U.S. Government did not occupy them until 2017." Proposed 2d Am. Compl. (ECF No. 27-1) at ¶ 14.

[2]SMM alleged in its original state-court petition that Travelers violated Texas Insurance Code § 541.060 by making misrepresentations when denying SMM's claim.

[3]To the extent SMM paraphrases the first Vertex report, Travelers states that the report speaks for itself and denies the remaining allegation in ¶ 12 of the amended complaint.

- 2 -

work, not SMM's.

Although Travelers cited the first Vertex report,[4] it nonetheless denied SMM's claim in reliance on the policy's "Flood Zone" endorsement.  Adam McClure ("McClure"), the Travelers' claim representative handling SMM's claim, then sent Travelers' first denial letter to SMM in June 2018.  In turn, SMM commenced litigation against AECOM, in which it named Vertex as a non-retained expert.  But in September 2019 Vertex issued a second report, concluding that the cause of the water loss was attributable to roof leaks,[5] and noting "there are many potential causes of the loss . . . .  The previous reports that cited moisture intrusion due to condensation do not appear to rule out any other causes[.]"  *Id.* at ¶ 18.  Thus the cause of loss fell under SMM's scope of work.  SMM settled with AECOM and requested that Travelers reevaluate its coverage position.  Travelers again denied SMM coverage in reliance on the policy's "Flood Zone" endorsement, and SMM filed this lawsuit, alleging that Travelers was liable on various claims for wrongfully denying coverage in connection with a loss event.

_____

[4]The first denial letter from Adam McClure ("McClure") contains a citation to Vertex's assertion, *inter alia*, that "Vertex did not observe evidence indicating that the reported excessive moisture and microbial growth was attributable to roof leaks."  SMM argues that McClure "adopted" this assertion.  In its answer, Travelers denies the allegation.

[5]Vertex's second report concludes that the water damage was most likely due to "water intrusion originating at the roof mate-lines and various roof penetrations."  Am. Compl. (ECF No. 12) at ¶ 18.

- 3 -

C

On August 24, 2020 the court entered the scheduling order ("Scheduling Order"), which required, in pertinent part, that the parties move for leave to amend the pleadings no later than October 1, 2020 and complete discovery by August 16, 2021.  Although the court amended the Scheduling Order on May 19, 2021, July 16, 2021, and September 30, 2021 in response to unopposed motions filed by one or both parties, these orders did not alter the deadlines in the Scheduling Order for moving for leave to amend the pleadings or for completing discovery in general.[6]

On October 1, 2020 SMM filed a timely, unopposed motion for leave to amend its original state-court petition, which the court granted.  SMM filed its amended complaint on October 22, 2020, asserting claims for breach of contract, additional claims for violations of Texas Insurance Code § 541.061, common-law fraud, fraudulent concealment, and negligent misrepresentation.  On April 15, 2021 the court set this case for trial on the two-week docket of March 21, 2022.

On June 9, 2021 Travelers asked SMM if it would oppose Travelers' amending its answer based on the deposition testimony of SMM's representative (Nick Mackie), received April 22, 2021.  SMM responded that it would not oppose such an amendment and that it intended to amend its complaint based on the deposition testimony of Travelers' claims

_____

[6]The July 16, 2021 order extended to October 8, 2021 the deadline to depose five individuals, and the September 30, 2021 order extended to October 14, 2021 the deadline to complete the deposition of Brian Shaffer.  No other extensions of the discovery deadline were granted.

handler, McClure, received April 29, 2021, and documents subpoenaed from Vertex received on June 3, 2021.  SMM deposed Sam Reed ("Reed") on August 20, 2021, and it maintains that Reed testified to new facts that SMM did not previously know and could not have anticipated.

SMM now moves to modify the Scheduling Order and for leave to file a second amended complaint to add six claims against Travelers based on alleged violations of the Texas Insurance Code.  It also moves to add allegations and clarity that explains the independent injury that it maintains it suffered because of Travelers' statutory violations. SMM also moves to modify the Scheduling Order to allow additional discovery.  Travelers opposes both motions, which were filed after the deadlines set by the Scheduling Order for moving for leave to amend the pleadings and for completing discovery.

II

A

When, as here, the deadline to file a motion for leave to amend the pleadings has expired, a court considering a motion to amend must first determine whether to modify the scheduling order under the Rule 16(b)(4) good cause standard.  *See S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.).  SMM recognizes this rule.  *See* P. Mot. to Modify & Amend (ECF No. 27) at 1 ("As this deadline has passed, SMM must first meet the 'good cause' standard of Rule 16(b)(4) to modify the Scheduling Order before SMM can file an amended pleading.").  In its motion to modify the

- 5 -

scheduling order and for leave to file a second amended complaint, it moves first to modify the Scheduling Order and then for leave to file a second amended complaint.

The court assesses four factors when deciding whether to grant an untimely motion for leave to amend: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (internal quotation marks and brackets omitted). The court considers the four factors holistically and "does not mechanically count the number of factors that favor each side." *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012). "The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order." *Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, 2009 WL 305994, at *1 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.). Mere inadvertence on the part of the movant is insufficient to constitute "good cause." *See Nunn v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 248523, at *2 (N.D. Tex. Jan. 26, 2011) (Fitzwater, C.J.). Instead, the movant must show that, despite its diligence, it could not have reasonably met the scheduling deadline. *See Am. Tourmaline Fields*, 1998 WL 874825, at *1.

If the movant satisfies the requirements of Rule 16(b)(4), the court next determines whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2); *see S & W Enters.*, 315 F.3d at 536; *Am. Tourmaline Fields*, 1998 WL 874825, at *1.

B

Rule 16(b)(4) also governs a party's request to extend the discovery period after the deadline established by a scheduling order has elapsed.  *See Cartier v. Egana of Switz. (Am.) Corp.*, 2009 WL 614820, at *2 (N.D. Tex. Mar. 11, 2009) (Fitzwater, C.J.).  To modify the scheduling order, a party must demonstrate good cause and obtain the judge's consent.  *Id.*  The good cause standard "require[s] the movant 'to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"  *Puig v. Citibank, N.A.*, 514 Fed. Appx. 483, 487-88 (5th Cir. 2013) (per curiam) (quoting *S & W Enters.*, 315 F.3d at 535).  In determining whether the movant has met its burden under Rule 16(b)(4), the court considers four factors: "(1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice."  *Squyres v. Heico Cos.*, 782 F.3d 224, 237 (5th Cir. 2015) (brackets omitted) (quoting *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010)).  The court considers the four factors holistically and "does not mechanically count the number of factors that favor each side."  *Serv. Temps*, 2009 WL 3294863, at *3.

III

The court considers first whether SMM has satisfied the Rule 16(b)(4) good cause standard for modifying the Scheduling Order so that it can move for leave to file a second amended complaint.

A

Under the first factor, the court evaluates SMM's explanation for failing to timely move for leave to amend.  *See S & W Enters.*, 315 F.3d at 536.

1

SMM filed a timely (and unopposed) motion for leave to file an amended complaint, which the court granted, but it did not file a timely motion for leave to file a second amended complaint.  SMM relies on two principal reasons for its failure to seek leave to amend by the deadline in the Scheduling Order: first, McClure, the Travelers claims handler, was not deposed until after the deadline, and his testimony shows that he cannot explain why there were inexcusable gaps in his communications with SMM; and, second, SMM did not receive relevant documents from Vertex, the forensic investigator who investigated the loss for Travelers, until after the deadline for seeking leave to amend.

2

Courts have found sufficient explanations in cases involving developments in applicable law and when new facts became known through depositions and document production.  *See Robles v. Archer W. Contractors, LLC*, 2015 WL 4979020, at *3 (N.D. Tex. Aug. 19, 2015) (Lynn, J.); *Settlement Cap. Corp. v. Pagan*, 649 F.Supp.2d 545, 566-67 (N.D. Tex. 2009) (O'Connor, J.).  Courts have found explanations to be insufficient when based on mere inadvertence, a misunderstanding of a court order or rule, or a misunderstanding of the law.  *See STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F.Supp.2d 845, 850 (E.D. Tex. 2004) ("[A] party's failure to meet a deadline due to mere inadvertence is tantamount to no

explanation at all.") (internal quotation marks omitted); *Geiserman v. MacDonald*, 893 F.2d 787, 791-92 (5th Cir. 1990) (holding that district court's decision to strike late expert designation and preclude expert testimony was not abuse of discretion where, *inter alia*, counsel misunderstood pretrial order and application of local rule); *Sun River Energy, Inc. v. McMillan*, 2014 WL 4771852, at *4 (N.D. Tex. Sept. 25, 2014) (Fitzwater, C.J.) ("[M]isunderstanding of the law, however, constitutes mere inadvertence, which is tantamount to no explanation at all.") (internal quotation marks omitted).

"Where courts decline to grant leave to amend due to a lack of diligence, it is usually because the party retained the records related to the desired amendment." *Howard v. Medicredit, Inc.*, 2018 WL 3752366, at *3 (N.D. Tex. Aug. 8, 2018) (Fitzwater, J.) (emphasis omitted); *see, e.g., Lopez v. Reliable Clean-Up & Support Servs., LLC*, 2018 WL 3609271, at *4 (N.D. Tex. July 27, 2018) (Fitzwater, J.) (holding that good cause was absent only because party had possessed documents relevant to amendments for at least 18 months before moving for leave); *Shofner v. Shoukfeh*, 2017 WL 3841641, at *2 (N.D. Tex. Apr. 7, 2017) (Cummings, J.) (declining to grant leave to amend where plaintiff "had access to all . . . [relevant] medical records early in the case, yet waited more than a year after filing suit to first hire expert witnesses to review the records").

3

SMM contends that it was not aware until after the October 1, 2020 deadline of facts supporting additional Texas Insurance Code claims and providing additional context to SMM's independent injury claim; that recent deposition testimony and subpoenaed

documents, obtained on April 29, 2021 and June 3, 2021, respectively, reveal new facts justifying the proposed amended complaint; that the deposition of Travelers' representative, McClure, makes it "much more apparent" that Travelers violated Texas Insurance Code § 541.060(a)(3) by failing to promptly provide an explanation for denying coverage, and § 541.060(a)(4)(A), by failing to affirm or deny coverage within a reasonable time; and that, before SMM received the documents subpoenaed from Vertex, it was unaware that Travelers and Vertex had negligently mishandled SMM's reconsideration request, thereby violating Texas Insurance Code §§ 541.060(a)(1), 541.060(a)(3), and 542.058.[7]

Travelers responds that, before October 1, 2020, SMM possessed the information needed to assert the newly added claims and revise the factual allegations for its independent injury claim; that SMM is relying on facts that could have been discovered either directly by SMM as a participant in the claims process or after Travelers' initial disclosures on September 1, 2020; that SMM is seeking to amend its pleadings to include a claim for misrepresentation that it dropped in its amended complaint; and that the claim for misrepresentation is premised on Vertex's contradicting opinions issued in its second report on the cause of loss at SMM's construction site, which SMM possessed in October 2019.[8]

_____

[7]SMM's brief cites Texas Insurance Code § 541.058(a), but SMM's motion for leave to amend cites § 542.058.  The court will refer to the section of the Texas Insurance Code cited in SMM's motion for leave to amend.

[8]Travelers states that SMM possessed the facts needed to support its previous claim for misrepresentation by August 2018, when SMM received Vertex's first report.  In SMM's proposed second amended complaint, however, it bases its misrepresentation claim on Vertex's "clearly conflict[ing]" representations of the primary cause of loss in Vertex's first

- 10 -

4

The court finds that the facts on which SMM relies to support leave to amend are substantially the same as, if not identical to, the facts discoverable before the October 1, 2020 deadline for moving for leave to amend. Regarding McClure's deposition testimony, SMM was aware as a participant in the claims process that McClure was delayed in his response.[9] SMM now relies on McClure's inability to "justify the long delays in his claim handling" to assert the additional claims. P. Reply Br. (ECF No. 37) at 3. But SMM fails to offer a reasonable explanation for why it needed to know whether McClure could "justify" his delay before SMM could bring the additional claims. Neither claim that SMM seeks to include based on McClure's testimony hinges on the *reason* for Travelers' delay rather than on the

and second reports. *See* P. Proposed 2d Am. Compl. (ECF No. 27-1) at ¶ 41. SMM alleges that, in October 2019, "Travelers forwarded to SMM [the 'Second Vertex Report'] that bizarrely discredited its first report and adopted a completely different conclusion." *Id.* at ¶ 31. Based on the allegations of SMM's proposed second amended complaint, it is reasonable to infer that SMM possessed the documents evidencing a misrepresentation claim in October 2019, not August 2018.

[9]Two of this court's decisions are factually distinguishable.

In *Howard* the court reasoned that the fact that the plaintiff was a party to conversations that supported new claims did not indicate a lack of diligence because it was "unsurprising and reasonable that [the plaintiff] would not recall the verbatim contents of each call." *Howard*, 2018 WL 3752366, at *3. Moreover, in *Howard* the plaintiff's delay was only three weeks, there was no physical record of the phone conversations until the phone records were subpoenaed, and, once the plaintiff realized that it was not feasible to wait for a subpoena, she began reviewing the defendant's production. *Id.* at *3-4.

In *Kouzbari v. Health Acquisition Co.*, 2018 WL 6514766 (N.D. Tex. Dec. 11, 2018) (Fitzwater, J.), this court found it was likewise unsurprising and reasonable that the plaintiff-movant would have overlooked an attachment to a single email received one year before filing the suit. *Id.* at *9.

*fact* that the delay existed.[10]

Regarding the recently subpoenaed Vertex documents, SMM does not dispute that documents from Travelers' initial disclosures made on September 1, 2020 included an email from a Vertex employee (Reed) to Travelers' representative (McClure) stating, in pertinent part: "I am not sure how I missed the email you sent back in May[.]" D. App. (ECF No. 33) at 030.  SMM fails to establish how the recently subpoenaed email from Vertex's Vice President, acknowledging that Reed "missed that email [from McClure]" and put Vertex "behind on something," P. App. (ECF No. 29) at 054, reveals new facts that SMM could not have obtained from a diligent review of Travelers' initial disclosures made on September 1, 2020.[11]

SMM maintains that "[a]ccording to Travelers, SMM was to review 2,158 pages of Travelers' production and ascertain every conceivable cause of action to add to SMM's pleadings ahead of the October 1, 2020 deadline (without taking any depositions)."  P. Reply Br. (ECF No. 37) at 3.  This argument lacks force.  First, the parties (including SMM) *jointly proposed* in their scheduling proposal that the court set October 1, 2020 as the deadline for

---

[10]SMM seeks to add two Texas Insurance Code claims based on McClure's deposition testimony: under § 541.060(a)(3), for failing to promptly provide an explanation for denying coverage, and under § 541.060(a)(4)(A), for failing to affirm or deny coverage within a reasonable time.

[11]In a parenthetical citation following SMM's discussion of the email, it states that "[Vertex] acknowledg[es] that Vertex was in a 'sticky' situation because it missed SMM's request for reconsideration and was now 'behind.'"  P. Reply Br. (ECF No. 37) at 3.  SMM did not submit its request for reconsideration directly to Vertex; it sent it to Travelers' representative (McClure), who then forwarded the request to Vertex.

seeking leave to amend the pleadings. *See* Aug. 18, 2020 Jt. Scheduling Proposal (ECF No. 5) at 1. SMM was aware when it joined the scheduling proposal that this deadline could be fixed in relatively close proximity to when Travelers made its initial disclosures. SMM's assertion that "Travelers cites no case showing that a litigant is required to amend its pleadings so quickly in order to meet the Rule 16 'good cause' standard," P. Reply Br. (ECF No. 37) at 3, thus runs up against its concurrence in the scheduling proposal.

Second, the good cause standard requires that the movant show that, despite its diligence, it could not have reasonably met the scheduling deadline. *See Am. Tourmaline Fields*, 1998 WL 874825, at *1. Merely relying on the quantity of documentary discovery, the length of time between when the discovery is served and motions for leave to amend are due, and the absence of depositions is insufficient in the context of this case to meet this burden, particularly in light of the fact that SMM *did* timely move for leave to amend its complaint by the October 1, 2020 deadline.

Third, SMM offers no explanation for why it did not move for an extension of the Scheduling Order deadline for seeking leave to amend the pleadings after receiving this volume of document production.[12]

---

[12]In *Kouzbari* the movant (Kouzbari) actively pursued settlement negotiations between the time the defendants made their initial disclosures and the time Kouzbari moved for leave to amend, instead of actively searching defendants' document production for new claims. *Kouzbari*, 2018 WL 6514766, at *7-8. Kouzbari moved for leave to amend only two months after the deadline. In contrast, SMM made no attempts to expedite the case between the time Travelers made its initial disclosures and the time SMM moved for leave to amend. And SMM moved for leave to amend almost ten months after the deadline.

The court therefore concludes that SMM's explanation fails to establish that, despite its diligence, it could not have reasonably met the scheduling deadline. The first factor thus weighs against modifying the Scheduling Order to enable SMM to move for leave to file a second amended complaint.

B

Under the second factor, the court considers the importance of the amendment. *See S & W Enters.*, 315 F.3d at 536.

"Courts deem 'amendments to be important where they potentially provide[] additional grounds for [a party] to recover, or directly affect[] [a party's] prospects of ultimate recovery.'" *Feldman v. Stryker Corp.*, 2020 WL 2507684, at *2 (N.D. Tex. May 15, 2020) (Scholer, J.) (quoting *Kouzbari v. Health Acquisition Co.*, 2018 WL 6514766, at *3 (N.D. Tex. Dec. 11, 2018) (Fitzwater, J.) (citations and internal quotations omitted)); *see Maynard v. PayPal, Inc.*, 2018 WL 5776268, at *4 (N.D. Tex. Nov. 2, 2018) (Fitzwater, J.).

SMM maintains, and Travelers does not dispute, that the proposed second amended complaint is important because it provides additional grounds for recovery and additional context to clarify SMM's claim for independent injury. Travelers notes that assuming SMM's amendment is important does not affect the court's assessment of the four factors holistically. The proposed amendment adds six claims on which SMM may be able to recover and directly affects SMM's prospects of ultimate recovery; therefore, the amendment makes important additions to this case. Accordingly, the court holds that the proposed amendment is important and that second factor weighs in favor of granting leave to amend

the Scheduling Order so that SMM can seek leave to file a second amended complaint.

C

The court will consider together the third factor—the potential prejudice in allowing the amendment—and the fourth factor—the availability of a continuance to cure any such prejudice. *See S & W Enters.*, 315 F.3d at 536.

1

SMM maintains that Travelers will not suffer prejudice. It contends that the trial is "nearly [eight] months from the date of the filing of this motion" and that "Travelers has more than [two] additional months to conduct discovery necessitated by the second amended complaint." P. Br. (ECF No. 28) at ¶¶ 26-27.

Travelers maintains that it will be prejudiced because the added claims will "needlessly increase the expense of [the] case," "complicate" an already "complicated and complex motion for summary judgment" due by October 25, 2021, and require additional discovery that Travelers cannot schedule because SMM's counsel is "largely unavailable."[13] D. Br. (ECF No. 32) at 8. Travelers contends that "a continuance could alleviate some of these issues" prejudicing Travelers, but "a continuance . . . rewards [SMM] for its lack of diligence, . . . in pursuing and responding to discovery." *Id.* Travelers posits that a continuance extending discovery would allow "[SMM] further opportunity to pursue discovery, an opportunity it would not have had if [SMM] had used diligence." *Id.*

---

[13]The deadline for dispositive motions and any other motions not otherwise covered by the scheduling order was extended from September 13, 2021 to October 25, 2021.

 In reply, SMM argues, *inter alia*, that even if discovery is only open to allow five additional depositions, Travelers has failed to explain "how any potential prejudice . . . could not be cured by an extension" and "why the current discovery deadline cannot be extended (if necessary)."  P. Reply Br. (ECF No. 37) at 5.

2

Travelers' assertions of prejudice can be divided into and analyzed in two parts: those that pertain to timing (i.e., for filing a summary judgment motion or attempting to schedule additional discovery during a period when SMM's counsel is unavailable), and those that relate to complicating and needlessly increasing the expense of the case.

The court finds that timing concerns can be adequately addressed by continuing applicable deadlines, such as for filing summary judgment motions or completing additional discovery.  *See, e.g., Johnson v. Karr*, 2017 WL 2362043, at *4 (N.D. Tex. May 31, 2017) (Fitzwater, J.) (finding no prejudice in granting motion for leave to file amended answer where, *inter alia*, a continuance of the discovery deadline could cure any prejudice).

And the court finds that granting SMM leave to file its second amended complaint will not prejudice Travelers by complicating the case and needlessly increasing the expense of the case given the similarity in the claims already asserted in SMM's amended complaint and the ones that it has included in its proposed second amended complaint.  *See, e.g., Kouzbari*, 2018 WL 6514766, at *4 (concluding that similarity of claims weighed against finding of unfair prejudice) (citing *Clapper v. Am. Realty Inv'rs, Inc.*, 2017 WL 978098, at *4 (N.D. Tex. Mar. 14, 2017) (Fitzwater, J.)).  Moreover, for an expense to be prejudicial,

- 16 -

it must be one that is unnecessary.  *See Maynard*, 2018 WL 5776268, at \*5 (holding that expense that party would incur in preparing renewed motion to dismiss did not support a finding of prejudice unless the expense was unnecessary—i.e., an expense that could have been avoided or reduced significantly).  Travelers has not demonstrated that it faces unnecessary expenses.

The court therefore finds that the third and fourth factors weigh in favor of granting leave to amend.

## D

The court now addresses the four factors holistically, without mechanically counting the number of factors that favor each side.  *See Serv. Temps*, 2009 WL 3294863, at \*3.

Although SMM's requested amendment is important and Travelers either will not be prejudiced or any prejudice can be cured by continuing applicable deadlines, SMM has failed to demonstrate that, despite its diligence, it could not have reasonably met the scheduling deadline.  *See, e.g., Mallory v. Lease Supervisors, LLC*, 2019 WL 3253364, at \*4 (N.D. Tex. July 19, 2019) (Fitzwater, J.) (quoting *Matamoros v. Cooper Clinic*, 2015 WL 4713201, at \*3 (N.D. Tex. Aug. 7, 2015) (Fitzwater, J.)) ("Courts deny motions to amend the scheduling order when the moving part[ies] fail[] to demonstrate that, despite [their] diligence, [they] could not have reasonably met the scheduling deadline.").  As this court has previously explained:

> [i]f the absence of undue prejudice or the availability of a continuance to cure such prejudice were alone determinative, the Rule 16(b)(4) standard would not be one of "good cause"; it would be an "absence of incurable prejudice" standard.  A moving party who, for example, had shown a complete lack of diligence and who undoubtedly could reasonably have met the scheduling deadline would still be able to obtain an amended scheduling order merely by demonstrating that the opposing party would not be prejudiced.  But the standard is "good cause," and the good cause standard focuses on the diligence of the party seeking to modify the scheduling order.

*Matamoros*, 2015 WL 4713201, at *3 (citation omitted); *see also Serv. Temps*, 2009 WL 3294863, at *3 (stating that the court must "remember at all times that the good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order," and finding that the movant had failed to satisfy the good cause standard of Rule 16(b)(4) where it had not provided plausible explanation for its delay, and that this failure to provide plausible explanation outweighed the other factors in the court's analysis).

SMM received Travelers' first denial letter on August 20, 2018, in which McClure, the Travelers' claims handler, apologized for his delay in returning the denial letter to SMM. SMM received Travelers' second denial letter on April 28, 2020.  By this point in time, SMM also possessed Vertex's "direct[ly] contradict[ing]" reports, which "destroyed SMM's position . . . [and] credibility . . . in the Prior Lawsuit [with AECOM].  P. Proposed 2d Am. Compl. at ¶ 33.  By September 1, 2020 SMM had obtained Travelers' document production, which included Travelers' claim file and Vertex's email to Travelers indicating that a Vertex employee had mishandled SMM's claim.  The deadline for filing a motion for leave to amend the pleadings was not until October 1, 2020.  SMM did not move for leave to amend the

Scheduling Order until almost ten months later. Even if the court assumes that SMM did not possess all the information it needed to allege the six additional claims and add context to clarify its independent injury claim, SMM has failed to demonstrate that, exercising reasonable diligence, it could not have determined by the October 1, 2020 deadline that Travelers had delayed, and made mistakes handling, SMM's claim.[14]

Considering the four factors together, the court concludes that SMM has failed to meet its burden to establish that there is good cause to amend the Scheduling Order. The court therefore denies SMM's motion to modify the Scheduling Order, and, in turn, declines to grant SMM leave to file a second amended complaint.[15]

IV

The court now considers whether SMM has satisfied the Rule 16(b)(4) good cause standard for extending the discovery deadline established by the Scheduling Order so that SMM can conduct additional discovery.

---

[14]SMM argues, *inter alia*, that the court "in fairness" should allow SMM leave to amend because the court on similar grounds permitted Travelers to amend after the deadline. Travelers' motion was unopposed, however, so the motions are not comparable.

[15]Because SMM has not satisfied the requirements of Rule 16(b)(4), the court will not determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2); *see S & W Enters.*, 315 F.3d at 536; *Am. Tourmaline Fields*, 1998 WL 874825, at *1.

A

SMM moves to extend the discovery deadline so that it can take the depositions of Jim Floyd ("Floyd"), Brian Dunn ("Dunn"), and William Dery ("Dery") (former or current employees of Vertex). It also seeks to serve narrowly-tailored document requests on Travelers and Vertex to discover the amount of business Vertex was doing with Travelers at the time of the loss, as well as discover what claims may have been made or threatened by Travelers against Vertex.

As the court has recounted above, the discovery deadline set by the Scheduling Order was August 16, 2021. On July 16, 2021 the court extended to October 8, 2021 the deadline to depose five individuals, including Reed, and on September 30, 2021 the court extended to October 14, 2021 the deadline to complete the deposition of Brian Shaffer. Both extensions were granted in response to unopposed motions.

On August 20, 2021 SMM deposed Reed, a Vice President of Vertex retained as an expert to give his opinion on the cause of the loss. SMM maintains that it learned from Reed's testimony facts that it did not previously know and could not have anticipated: that Reed had very little hands-on involvement in the investigation and reporting regarding the loss; that former Vertex employees Floyd and Dunn were the lead investigators and draftsmen in connection with the loss; that Reed had no communication with Travelers and was not involved in any discussions regarding changes to Vertex's causation reports that Travelers requested; and that another Vertex representative, Dery, appeared to be the only Vertex representative with knowledge of Travelers' potential influence on Vertex's

investigation and reporting.  SMM contends that the depositions of Floyd, Dunn, and Dery are necessary for SMM to properly investigate the reasonableness of Vertex's investigation, which directly impacts SMM's claims against Travelers under the Texas Insurance Code.

SMM also contends that it learned from Reed's deposition testimony that Vertex anticipates litigation from Travelers in connection with Vertex's investigation of SMM's claim; that Reed had no personal knowledge regarding the nature and status of any such claim; and that Reed could not give specific details regarding the amount of work Vertex was performing for Travelers at the time Vertex investigated SMM's claim.  SMM posits that both areas of inquiry are relevant to Reed's and Vertex's objectivity and reliability as experts.  It contends that Vertex's fear of litigation from Travelers is important because it suggests that Travelers is blaming its own expert for this situation and/or that there may be an agreement by Vertex to indemnify Travelers for any damages awarded against it, all of which impacts the objectivity and independence of Vertex as an expert designated by Travelers.  SMM maintains that it needs to serve narrowly-tailored document requests on Travelers and Vertex to discover the amount of business Vertex was doing with Travelers at the time of the loss, as well as to discover what claims may have been made or threatened by Travelers against Vertex.

Travelers opposes SMM's motion, which the court now evaluates under the familiar four-factor test.

- 21 -

B

The first factor the court considers is SMM's explanation for its failure to timely comply with the Scheduling Order.  *See Squyres*, 782 F.3d at 237.

SMM maintains that it failed to timely complete the requested discovery by the deadline specified in the Scheduling Order because it first learned of the need for the discovery from the deposition of Reed, which was not taken until August 20, 2021, four days after the general discovery period expired.  Travelers offers several counter arguments to SMM's explanation, but two facts are key: First, Reed's deposition was not taken until August 20, 2021, after the deadline for general discovery had already expired, on a date permitted under a July 16, 2021 order that the court entered in response to the parties' *joint* motion.[16]  And, second, SMM has established that it could not have known the need for the additional discovery it seeks until after Reed testified.  As the court states above, *see supra* § III(A)(2), "Courts have found sufficient explanations in cases . . . when new facts became known through depositions and document production."  The court likewise deems SMM's explanation to be sufficient and finds that the first factor weighs in favor of a finding of good cause.

---

[16]Travelers' contention that SMM could have sought Reed's deposition within the discovery period is misdirected given its joinder in the motion to amend the scheduling order to permit his deposition to be taken by October 8, 2021.

C

The second factor the court considers the importance of the modification. *See Squyres*, 782 F.3d at 237.

SMM maintains that the additional discovery is important because Floyd and Dunn possess superior knowledge of the investigation and authoring of Vertex's initial two reports concerning the loss at issue, and their depositions will reveal facts bearing on whether Vertex performed a reasonable investigation; that SMM needs testimony from Dery because Reed's testimony made it apparent that only Dery knows the influence Travelers had over the drafting of Vertex's first report; and that discovery in the form of narrowly-tailored documents requests regarding the threatened or anticipated claim made by Travelers to Vertex is important to test the reliability of Reed as an expert.

Travelers responds that nothing about whether Travelers has asserted claims against Vertex has any bearing on the reliability of Reed as an expert; that, even if Travelers had asserted claims, they would have been premised on SMM's allegations and claims that the Vertex reports were unreliable; and that nothing about that speaks to whether Reed is a reliable witness. Travelers also maintains that additional discovery about the investigation undertaken by Vertex is unlikely to be important because documents have been produced reflecting the entirety of the materials that were provided to Travelers in the course of the claim investigation and the materials that were made available to Vertex in the course of its inspection; the deposition of Floyd is unlikely to shed additional light on that issue; discovery regarding the amount of business done between Vertex and Travelers in 2017 is

- 23 -

irrelevant; and this is not a case where the alleged bias of Vertex has any relevance. Travelers contends that SMM already has Reed's admission that Vertex does quite a bit of business for Travelers and that he would not want Vertex to lose any of Travelers' business, and that additional discovery on actual facts and figures regarding the business relationship between Travelers and Vertex is not relevant to the particular claims or defenses in this case.

Because the court declines to accept Travelers' relevance-based challenges to the discovery SMM seeks, it finds that the requested modification of the Scheduling Order is important.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Rule 26(b)(1).

Whether an expert witness is biased affects the witness' credibility, including his reliability as an expert. *See, e.g., Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 423 n. 2 (5th Cir. 1987) (stating that expert who forms his opinion before conducting any research is biased and lacking in objectivity, which could be a ground for excluding him as a witness due to lack of reliability).  And discovery can be sought concerning potential expert bias when it

- 24 -

otherwise falls within the scope of discovery permitted by Rule 26(b)(1).

It appears from the record developed thus far that the discovery SMM seeks—including concerning possible expert witness bias—is relevant and discoverable. The court therefore concludes that modifying the Scheduling Order to permit this discovery is important and that the second factor weighs in favor of a finding of good cause.

## D

The court will consider together the third factor—the potential prejudice in allowing the modification—and the fourth factor—the availability of a continuance to cure such prejudice. *See Squyres*, 782 F.3d at 237.

SMM maintains that Travelers will not be prejudiced because the trial is set for March 21, 2022, which is more than six months from the date it filed the instant motion; no trial continuance will be necessary; Travelers has been afforded through October 8, 2021 to conduct three additional depositions; and Travelers will not be prejudiced by SMM's additional discovery because the parties have already agreed to continue taking depositions past the current discovery deadline.

Travelers responds that it will be prejudiced because, if the Scheduling Order is amended to permit additional discovery first requested after the deadline, Travelers will be forced to incur additional legal fees and expenses associated with responding to written discovery and preparing for and attending three additional depositions; although certain depositions are already scheduled through October 8, 2021 to accommodate the schedule of SMM's counsel, allowing additional discovery will further prolong discovery past that date

and may result in additional discovery being taken after Travelers files its motion for summary judgment, which is due by October 25, 2021; and Travelers will be prejudiced if it is forced to file its summary judgment motion before discovery is completed.

Travelers' assertions of prejudice can be divided into two parts: timing (for filing a summary judgment motion) and cost.  The timing objections rest on the premise that Travelers could be required to file its summary judgment before discovery concludes.  These objections can be addressed by a continuance: continuing the deadline for filing dispositive motions until after discovery closes.

The cost objection lacks force because Travelers has failed to demonstrate that it will incur additional discovery-related legal fees and expenses due to the modification of the Scheduling Order rather than the fact that additional discovery is being permitted.  As the court holds above, *see supra* § III(C)(2), for an expense to be prejudicial, it must be one that is unnecessary.  *See Maynard*, 2018 WL 5776268, at *5.  When a court permits one party to obtain additional discovery after the original deadline, it is often the case that the opposing party will incur legal fees and expenses that it would not otherwise have expended.  Merely because the opposing party will incur these fees and expenses, however, does not mean that it has been prejudiced in the sense relevant here.  This is so because it can be inferred that the expenses would have been incurred had the discovery been sought before the deadline.  Prejudice in the relevant sense comes into play when the opposing party incurs unnecessary expenses as a result of the timing of the additional discovery.  For example, a party's attorney may travel to a location to take the deposition of witness A, when the attorney could also

have deposed witness B (who resides in the same location) had the deposition of witness B not been first requested until after the discovery deadline.  Travelers has not demonstrated prejudice in the relevant sense, i.e., that it will incur unnecessary discovery-related legal fees and expenses due to the modification of the Scheduling Order rather than the fact that additional discovery is being permitted.

The court therefore concludes that the third and fourth factors weigh in favor of a finding of good cause.[17]

E

The court now addresses the four factors holistically, without mechanically counting the number of factors that favor each side.  *See Serv. Temps*, 2009 WL 3294863, at *3.

Assessing the four factors together, the court concludes that SMM has demonstrated good cause to modify the Scheduling Order.  SMM took Reed's deposition on August 20, 2021, after the discovery deadline but on a date that was permitted under a court order entered on the parties' joint motion.  SMM first learned of information from Reed's testimony—including concerning possible expert witness bias—that appears to be relevant and discoverable.  It is therefore important to modify the Scheduling Order to enable SMM to conduct discovery that would otherwise be precluded.  To the extent that granting this

---

[17]In *Kirkindoll v. Texans Credit Union*, 2012 WL 4866501, at *25 (N.D. Tex. Oct. 15, 2012) (Fitzwater, C.J.), this court found that the defendants' general arguments that "the proposed amendments will require that discovery be reopened, and that dispositive motion deadlines be extended in a case that has been pending for nearly a year" did not constitute prejudice. *See also Franklin v. L. Firm of Simon, Eddins & Greenstone, L.P.*, 2012 WL 2159219, at *2 (N.D. Tex. June 14, 2012) (Fitzwater, C.J.).

relief would otherwise require Travelers to move for summary judgment before discovery is concluded (including the discovery permitted by granting SMM's motion), the court can continue the dispositive motion deadline.  And insofar as Travelers is attempting to demonstrate prejudice due to the additional cost of discovery, it has not shown that its objection is based on unnecessary additional discovery-related legal fees and expenses caused by the modification of the Scheduling Order rather than the fact that additional discovery is being permitted.

In sum, SMM has shown that the discovery deadline could not reasonably have been met, despite SMM's diligence, with regard to the requested discovery.  The court thus grants SMM's motion to modify the scheduling order to allow additional discovery as follows: SMM must complete the depositions of Floyd, Dunn, and Dery within 45 days of the date this memorandum opinion and order is filed[18] and must serve the document requests on Travelers and Vertex within 14 days of the date this memorandum opinion and order is filed.

*    *    *

Accordingly, for the reasons explained, the court denies SMM's July 26, 2021 motion to modify the scheduling order and for leave to file a second amended complaint, and it grants SMM's September 13, 2021 motion to modify the scheduling order to allow additional discovery.  SMM must complete the depositions of Floyd, Dunn, and Dery within 45 days

---

[18]For cause, the court will grant reasonable extensions of this deadline.  The court encourages the parties to work cooperatively when requesting extensions, assuming any are needed.

of the date this memorandum opinion and order is filed, and it must serve the document

requests on Travelers and Vertex within 14 days of the date this memorandum opinion and

order is filed.

**SO ORDERED**.

October 15, 2021.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE